United States District Court
Eastern District of New York                          2:20-cv-02571-ARR-ST

Paul Lepore, individually and on behalf of
all others similarly situated,

                Plaintiff,

        - against -

Molekule, Inc.,

                Defendant

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Compel Arbitration and to
Dismiss the Amended Complaint or Stay the Litigation

**Sheehan & Associates, P.C.**
Spencer Sheehan
60 Cuttermill Rd, Ste 409
Great Neck, NY 11021-3409
Telephone: (516) 268-7080
spencer@spencersheehan.com

**Reese LLP**
Michael R. Reese
100 W 93rd St Fl 16
New York, New York 10025-7524
Tel: (212) 643-0500
mreese@reesellp.com

*Attorneys for Plaintiff*

**Table of Contents**

Tables of Authorities ................................................................................................................. iii

Introduction ................................................................................................................................ 1

Facts .......................................................................................................................................... 1

Argument ................................................................................................................................... 1

I.        Applicable Standard to Compel Arbitration ....................................................................... 1

           A.      The Purported Arbitration Agreement Was Not Clear and Conspicuous ................................................................................................................... 2

           B.      Defendant's Arbitration Provision in the Terms and Conditions Is Outside the Scope of Plaintiff's Claims and the Agreement Is Unconscionable ............................................................................................................. 6

           C.      Arbitrability Can Be Determined by This Court ...................................................... 9

Conclusion ............................................................................................................................... 10

## Tables of Authorities

**Cases**

*Applied Energetics, Inc. v. Newoak Capital Mkts.*, LLC,
    645 F.3d 522 (2d Cir. 2011).................................................................................................. 2

*Bensadoun v. Jobe-Riat*,
    316 F.3d 171 (2d Cir. 2003).................................................................................................. 2

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) ............................................................................. 3, 5, 8

*Brennan v. Bally Total Fitness*,
    198 F. Supp. 2d 377 (S.D.N.Y. 2002).................................................................................... 6

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).................................................................................................. 2

*Desiderio v. National Ass'n of Sec. Dealers*,
    191 F.3d 198 (2d Cir. 1999).............................................................................................. 7, 8

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)............................................................................................................... 2

*Gillman v. Chase Manhattan Bank*,
    73 N.Y.2d 1, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988)...................................................... 6

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
    561 U.S. 287 (2010)............................................................................................................... 1

*Hines v. Overstock.com, Inc.*,
    380 Fed. Appx. 22 (2d Cir. 2010).......................................................................................... 3

*Howsam v. Dean Witter Reynolds*,
    537 U.S. 79 (2002)................................................................................................................. 2

*JPay, Inc. v. Kobel*,
    904 F.3d 923 (11th Cir. 2018) .............................................................................................. 2

*Kai Peng v. Uber Technologies, Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ..................................................................................... 9

*Kernaghan v. Forster & Garbus, LLP*,
    2019 U.S. Dist. LEXIS 32268 (E.D.N.Y. Feb. 25, 2019) ..................................................... 3

*Meyer v. Uber Techs, Inc.,*
    868 F. 3d 66 (2d Cir. 2017)........................................................................................... 3, 4, 5

*Nguyen v. Barnes & Noble Inc.*,
   763 F. 3d 1171 (9th Cir. 2014) ............................................................................................... 4, 5

*Nicosia v. Amazon. Com.,* Inc.,
   834 F.3d 220 (2d Cir. 2015) ........................................................................................................ 5

*Nicosia v. Amazon.com, Inc.*,
   2017 U.S. Dist. LEXIS 133701 (E.D.N.Y. Aug. 18, 2017) ........................................................ 2

*Noble v. Samsung Elecs. Am., Inc.*,
   682 Fed. Appx. 13 116 (3d Cir. 2017) ....................................................................................... 5

*Resorb Networks, Inc. v. YouNow.com,*
   30 N.Y.S.3d 506 (N.Y. Sup. Ct. 2016) ...................................................................................... 3

*Schnabel v. Trilegiant Corp.*,
   697 F.3d 110 (2d Cir. 2012) .............................................................................................. passim

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17 (2d Cir. 2002) ..................................................................................................... 3, 4

*Starke v. Squaretrade, Inc.,*
   913 F. 3d 279 (2d Cir. 2019) .................................................................................................. 3, 4

*Williams v. Walker-Thomas Furniture Co.*,
   350 F.2d 445 (D.C. Cir. 1965) ................................................................................................... 7

## Introduction

Plaintiff Paul Lepore ("Plaintiff") submits this memorandum of law in opposition to Defendant Molekule Inc's ("Molekule" or "Defendant") Memorandum of Law in Support of Motion to Compel Arbitration and to Dismiss the Complaint or Stay the Litigation ("Def. Mem.").

## Facts

Plaintiff brings claims for violations of New York General Business Law Sections 349 and 350, negligent misrepresentation, breach of warranty, fraud, and unjust enrichment on behalf of himself and a New York class. These claims are brought in Plaintiff's First Amended Complaint ("Am. Compl.") on the basis of Defendant's sale and marketing of its "Air" brand air purifiers (the "Product"). Am. Compl. at ¶ 1. Defendant markets these Products with conspicuous claims that the air purifiers will "destroy" germs and "eliminate" indoor air pollution. Am. Compl. at ¶ 2. Plaintiff contends that these claims are false and misleading. Am. Compl. at ¶¶ 24-25.

Plaintiff purchased the Product on October 8, 2017 from Defendant's website for the price of $746.00. Am. Compl. at ¶ 42. On September 20, 2018, Plaintiff purchased replacement air filters for the Product. Def. Mem. at 4. To purchase these replacement air filters, Plaintiff was required to create an account on Defendant's website and click a box on Defendant's website indicating assent to certain Terms and Conditions. *Id*. This clickthrough box that was required to complete the purchase. *Id*. Defendant does not contend that Plaintiff agreed to the Terms and Conditions at issue here when he first purchased the Product in October 2017.

## Argument

I.  **Applicable Standard to Compel Arbitration**

When determining whether an arbitration agreement exists in the first instance the liberal federal policy favoring arbitration agreements does not apply. *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 302 (2010) (directing courts to apply the presumption of arbitrability

1

"only after the Court was persuaded that the parties' arbitration agreement was validly formed"); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002) ("a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."). "Assuming that the parties agreed to arbitrate arbitrability 'might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.'" *JPay, Inc. v. Kobel*, 904 F.3d 923, 930 (11th Cir. 2018) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). Thus, "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics, Inc. v. Newoak Capital Mkts.*, LLC, 645 F.3d 522, 526 (2d Cir. 2011).

In determining whether there is an agreement to arbitrate, the court applies a standard similar to summary judgment. *See Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003). The court must accept as true the underlying allegations in the complaint. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). The Court must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *See Nicosia v. Amazon.com, Inc.*, 2017 U.S. Dist. LEXIS 133701, at *14 (E.D.N.Y. Aug. 18, 2017) ("*Nicosia III*") (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). If a genuine issue of material fact exists concerning the existence of an agreement to arbitrate, the parties are entitled discovery and a hearing before a fact-finder. *See Nicosia III*, 2017 U.S.Dist. LEXIS 133701, at *5 (E.D.N.Y. Aug 18, 2017) (court permitted arbitration related discovery on whether parties formed agreement to arbitration).

A. <u>The Purported Arbitration Agreement Was Not Clear and Conspicuous</u>

Defendant bears the burden of proving that the parties formed an agreement to arbitrate.

*Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22, 24 (2d Cir. 2010) (citations omitted); *Kernaghan v. Forster & Garbus, LLP*, 2019 U.S. Dist. LEXIS 32268, at *8 (E.D.N.Y. Feb. 25, 2019). Defendant must make a prima facie initial showing that an agreement to arbitrate existed, which shifts the burden to Plaintiff to show that factual disputes exist to "put the making of that agreement in issue." *Hines*, 380 Fed. Appx. at 24.

The threshold question here, as in any arbitration motion, is whether the parties have contractually bound themselves to an arbitration agreement. *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 26 (2d Cir. 2002); *Starke v. Squaretrade, Inc.,* 913 F. 3d 279, 288 (2d Cir. 2019) (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015). "'Mutual manifestation of assent' is the 'touchstone' of a binding contract." *Berkson*, 97 F. Supp. 3d at 388 (quoting *Specht*, 306 F.3d at 29). "Arbitration agreements are no exception to the requirement of manifestation of assent." *Specht*, 306 F.3d at 30; *Starke,* 913 F. 3d at 288-89 ("[T]o be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'").

State law principles of contract formation apply to the arbitrability question. *Meyer v. Uber Techs, Inc.,* 868 F. 3d 66 (2d Cir. 2017). "The manifestation of mutual asset must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Starke*, 913 F. 3d at 289 (2d Cir. 2019).

In the case of web-based contracts, courts apply an objective standard for determining whether the customer will be bound by an agreement to arbitrate. *Meyer,* 868 F.3d at 74-75. Courts will find assent and enforce an agreement to arbitrate where a *"reasonably prudent user would be on inquiry notice of the terms."* *Id.* (citing *Schnable*, 697 F.3d at 120); *Resorb Networks, Inc. v. YouNow.com,* 30 N.Y.S.3d 506, 511 (N.Y. Sup. Ct. 2016) (noting that when

3

evaluating a transaction occurring online, courts focus on "whether a reasonably prudent offeree would be on notice of the term at issue" and whether the terms of the agreement were "reasonably communicated to the user," because assent is mostly passive online).

Courts look to whether the term was obvious and whether it was called to the offeree's attention. *Starke*, 913 F.3d at 289 (citing 22 N.Y. Jur. 2d Contracts § 29 ("[A] party should not be bound by clauses printed on the reverse side of a contract unless it is established that they were *properly called to his or her attention* and that he or she assented to them.")). "Whether a reasonably prudent user would be on inquiry notice turns "on the [c]larity and conspicuousness of arbitration terms . . . [I]n the context of web-based contracts . . . clarity and conspicuousness are a function of the design and content of the relevant interface." *Meyer*, 868 F.3d at 74; *Specht*, 306 F.3d at 30. *Starke,* 913 F.3d at 289; *Nguyen v. Barnes & Noble Inc.*, 763 F. 3d 1171, 1177 (9th Cir. 2014).

Courts have recognized that "[a]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Schnabel*, 697 F.3d at 123. "Clarity and conspicuousness of arbitration terms are important in securing informed assent." *Specht*, 306 F.3d at 30. "If a party wishes to bind in writing another to an agreement to arbitrate future disputes such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto." *Id.*

The enforceability of web-based agreements to arbitrate has been the subject of analysis in numerous federal court decisions in this Circuit and others. *See, e.g.*, *Starke v. Squaretrade, Inc.*, 913 F.3d 279 (2d Cir. 2019) (refusing to compel arbitration); *Meyer v. Uber Techs, Inc.*,

4

868 F. 3d 66 (2d Cir. 2017) (upholding agreement to arbitrate); *Nicosia v. Amazon. Com.,* Inc., 834 F.3d 220 (2d Cir. 2015) (holding reasonable minds could differ on the reasonableness of the notice); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012); *Berkson*, 97 F. Supp. 3d at 388 (denying motion to compel arbitration finding, after exhaustive review of various forms of web-based so called "wrap" agreements, that the "design and content" of Gogo's website did not demonstrate that plaintiff Berkson knew he was binding himself to such an agreement). *See also Cullinane v. Uber Techs, Inc.*, 893 F. 3d 53 (1st Cir. 2018) (finding that the terms of the agreement to arbitration were not reasonably communicated to plaintiffs); *Noble v. Samsung Elecs. Am., Inc.*, 682 Fed. Appx. 13 116 (3d Cir. 2017) (arbitration clause will only be binding when the terms are reasonably conspicuous rather than proffered unfairly or with a design to conceal or de-emphasize its provisions) *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171 (9th Cir. 2014 ). What emerges from these cases is that ultimately, determinations as to whether to grant or deny a motion to compel remain a fact specific inquiry that requires the Court to consider the specific facts in each case to determine whether, objectively, the agreement to arbitrate was sufficiently clear and conspicuous to force a plaintiff to arbitrate a dispute where there is no evidence the plaintiff actually knew about or agreed to arbitrate disputes. *See Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 233-234, 238 (2d Cir. 2016).

  Here, In September 2018, Defendant created an account on Defendant's website in order to purchase replacement filters for the Product. Def. Mem. at 2-3. Defendant does little more than assert that a user need only click a singular button to assent to the myriad terms and conditions contained in Defendant's Terms of Service. Def. Mem. at 2 ("To create a Molekule account via the Molekule website, customers were required to agree to Molekule's Terms and Conditions by

5

clicking a box next to text that read 'Accept Terms and Conditions," with the bolded text also serving as a hyperlink directing users to the Terms themselves").

"As a general principle, an offeree cannot actually assent to an offer unless the offeree knows of its existence." *Schnabel*, 697 F.3d at 121 (citations omitted). Defendant is clear that Plaintiff did not need to agree to the arbitration terms to purchase the original Product. Def. Mem. at 3 ("In September 2018 . . . customers who wished to purchase replacement filters for Molekule's purifiers were required to create an account with Molekule before they completed their transaction."). Plaintiff needed only to agree to the Terms and Conditions to purchase replacement filters. *Id*.

Given what Plaintiff agreed to, the arbitration clause, should it exist, applies only to disputes that arise out of Plaintiff's purchase of replacement filters. That, if anything, is what Plaintiff agreed to when he clicked through on the Terms and Conditions when purchasing the air filters. Plaintiff was not put on sufficient notice that the clickthrough agreement he was required to assent to would retroactively apply to his purchase of the Product itself. This case concerns the purchase of Defendant's air purifiers in the first instance and not, specifically, the purchase of Defendant's replacement filters. The deception at issue induced Plaintiff and others into purchasing the Product. That original purchase was not bound by the four corners of any arbitration agreement.

      B.    <u>Defendant's Arbitration Provision in the Terms and Conditions Is Outside the Scope of Plaintiff's Claims and the Agreement Is Unconscionable</u>

"An agreement is unenforceable when it is unconscionable." *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002) (citing *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988)). "An unconscionable contract is one which is so grossly unreasonable or unconscionable in the light of the mores and business practices

6

of the time and place as to be unenforceable according to its literal terms." *Id*. One of the ways in which a contract can be unconscionable is when a party to the contract lacks meaningful choice together with contract terms which are unreasonably favorable to the other party. *Id*. (citing *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965); *see also Desiderio v. National Ass'n of Sec. Dealers*, 191 F.3d 198, 207 (2d Cir. 1999). Thus, there is a procedural element of unconscionability – no meaningful choice – and a substantive element of unconscionability – the contract terms are unreasonably favorable to the party against whom unconscionability is claimed.

As of September 2018, customers who wished to purchase Molekule filters on Defendant's website were required to create an account. The plain language of Defendant's arbitration provision is limited to "any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services or Content." The "Services" refer to "the Site, the Products and the App." The Terms and Conditions further state, "It's important that you review the Terms whenever we modify them because if you continue to use the Services or if you purchase our Products after we have posted modified Terms on the Site, you are indicating to us that you agree to be bound by the modified Terms." Defendant's modification of the Terms and Conditions which appeared when Plaintiff purchased air filters should not bind him to arbitration based on the deceptive marketing that induced him to purchase the Product in the first instance.

This contractual bait-and-switch is unconscionable and renders the arbitration agreement void. "To characterize a term as unconscionable requires a showing that the contract was both procedurally and substantively unconscionable when made – i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are

7

unreasonable favorable to the other party." *Berkson*, 97. F. Supp. 3d at 391 (internal quotations omitted).

Plaintiff lacked a meaningful choice when purchasing his air filters approximately one year after purchasing the base air purifier. Am. Compl. at ¶ 42. Plaintiff had already spent $746.00 on Defendant's Product. In order not to lose the full cost of his purchase, Plaintiff would need to purchase replacement air filters from Defendant and create a user account to do so. This put Plaintiff into a situation which renders the Terms and Conditions unconscionable and void: Plaintiff would need to either sacrifice the full purchase price of the Product – the direct result of never purchasing replacement air filters – or forego the purchase of necessary replacement materials. Thus, Plaintiff did not have a reasonable and meaningful choice to make regarding his agreement to the Terms and Conditions.

The arbitration agreement is also substantively unconscionable because its terms unreasonably favor Defendant. Generally, "arbitration agreements that bind both parties to arbitration may not be said to favor the stronger party unreasonably." *Desiderio*, 191 F.3d at 207.

In *Brennan*, the arbitration agreement was found to be unconscionable because "(1) its terms allow Bally to unilaterally modify the contract at any time, thus binding employees to a contract they may never have seen; and (2) the [contract] denied Brennan the right to proceed in court on her pending sexual harassment claim against the company." *Brennan*, 198 F. Supp. 2d at 385.

There are parallels between *Brennan* and the instant case. First, Defendant is clear, "We may modify the Terms at any time, in our sole discretion." Huq Decl., Exhibit A. This would unilaterally bind the end user to the modified Terms and Conditions, thus potentially retroactively changing the Terms in Conditions in ways favorable to Defendant and to the detriment of Plaintiff

8

and consumers. Such a scenario played out in this case. Potentially fearing litigation such as this case represents, Defendant attempted to cover its tracks by unilaterally changing the Terms and Conditions and making Defendant and consumers agree to them in order to purchase replacement filters even if Plaintiff did not need to agree to the Terms and Conditions to purchase the Product in the first instance.

Second, while Plaintiff did not have a case pending when he purchased the replacement air filters, he was not aware that he was extinguishing his rights as to the original purchase of the Product. The Terms and Conditions could reasonably be read to pertain solely to the purchase of the air filters and future purchases.

    C.    <u>Arbitrability Can Be Determined by This Court</u>

Defendant argues that the scope of the arbitration provision should itself be determined by the arbitrator. Def. Mem. at 7-10. However, under New York law, where a party claims that he never consented to the agreement containing the arbitration clause, courts will determine whether the parties consented to the agreement notwithstanding the delegation clause. *Kai Peng v. Uber Technologies, Inc.*, 237 F. Supp. 3d 36, 45 (E.D.N.Y. 2017) (collecting authority and noting "whether Plaintiffs assented to the Services Agreement, and therefore to the arbitration clauses, is a matter for the Court to decide notwithstanding the delegation clause").

In *Kai Peng*, the court reasoned that while the questions of arbitrability may be delegated to an arbitrator, "the more basic issue . . . of whether the parties agreed to arbitrate in the first place is one only a court can answer, since in the absence of any arbitration agreement at all, 'questions of arbitrability' could hardly have been clearly and unmistakably given over to an arbitrator." *Kai Peng*, 237 F. Supp. 3d at 45.

Here, since the Court should find that the Terms and Services represented an unconscionable and void contract, the issue of whether the parties agreed to arbitrate the question

9

of arbitrability need not be answered. If the Court were to consider this issue, then because the Terms and Conditions themselves are void, so to is the issue of whether the parties agreed to arbitrate arbitrability.

## Conclusion

For the foregoing reasons, the Court should deny Defendant's motion in its entirety.

Date:   November 30, 2020

Respectfully submitted,

**Sheehan & Associates, P.C.**
*/s/Spencer Sheehan*
Spencer Sheehan
spencer@spencersheehan.com

Christopher Patalano
cpatalano@spencersheehan.com

60 Cuttermill Rd Ste 409
Great Neck, New York 11021
Tel: (516) 268-7080

**Reese LLP**
Michael R. Reese
100 W 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
Fax: (212) 253-4272
mreese@reesellp.com

2:20-cv-02571-ARR-ST
United States District Court
Eastern District of New York

Paul Lepore, individually and on behalf of all others similarly situated,

      Plaintiff,

  -against-

Molekule, Inc.,

      Defendant

Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion to Compel Arbitration and to Dismiss
The Amended Complaint or Stay Litigation

Sheehan & Associates, P.C.
60 Cuttermill Rd, Ste 409
Great Neck, NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Date: November 30, 2020

                 /s/Spencer Sheehan
                 Spencer Sheehan

1

**Certificate of Service**

I certify that on November 30, 2020, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan